IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SHANNON HUDDLESTON, and HAFIZ HASSLER RAHIM, <br><br> Plaintiffs, <br><br> vs. <br><br> PAM BONDI, United States Attorney General; MARCO RUBIO, United States Secretary of State; KRISTI NOEM, Secretary of Homeland Security; KIKA SCOTT, Acting Director of the United States Citizenship and Immigration Service; ROLF OLSON, Deputy Chief of Mission, Accra, Ghana; and THOMAS SCHUURMANS, Acting Director of the USCIS Nebraska Service Center of the USCIS, <br><br> Defendants. | 4:25CV3002 <br><br><br> MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS FOR LACK OF VENUE |

Plaintiffs in this action, a United States citizen and her non-citizen husband, have brought a Complaint for Declaratory and Injunctive Relief and for Writ of Mandamus. Filing 5-1 at 2 (¶ 1). They "ask[ ] the Court [to] compel within 30 days the issuance of an immigrant visa based on an I-130 petition for alien relative ('I-130') filed over four years ago" and to "enjoin the US Department of State from sending the I-130 back to US Citizenship and Immigration Services ('USCIS')." Filing 5-1 at 2 (¶ 1). This case is before the Court on Defendants' Motion to Dismiss for Lack of Venue pursuant to Federal Rule of Civil Procedure 12(b)(3). Filing 12. For the reasons stated below, the Motion is granted to the extent that this case is transferred pursuant to 28 U.S.C. § 1406 to the United States judicial District for the District of Columbia as a venue in which this case could have been brought.

1

## I.  INTRODUCTION

### A.  Factual Background

Although this matter is before the Court on the narrow issue of venue presented in Defendants' Motion, a brief statement of the factual and procedural context of the case will be helpful. Courts in this District take allegations in the Complaint bearing on venue as true, unless they are controverted by the defendant's affidavits.[1] Defendants in this case have not submitted any affidavits to contradict allegations in the Amended Complaint, which is the operative pleading. Filing 5-1 (Amended Complaint); Filing 12 (motion to dismiss); Filing 13 (brief).

Plaintiff Shannon Huddleston, a United States citizen, filed an I-130 petition for an immigrant visa for her spouse, plaintiff Hafiz Hassler Rahim, to enter the United States as a lawful permanent resident. Filing 5-1 at 5 (¶¶ 15–16). She alleges that the petition was approved by USCIS on March 30, 2022. Filing 5-1 at 5 (¶¶ 16, 18). The I-130 petition was then forwarded to the Department of State (DOS), which accepted Rahim's documentation of a passport and birth certificate as valid and accurate. Filing 5-1 at 6 (¶ 18).

A consular officer eventually held an immigrant visa interview at the U.S. Embassy in Accra, Ghana, on January 17, 2024. Filing 5-1 at 6 (¶ 19). However, on February 6, 2024, "the

---

[1] See *Dobson Bros. Constr. Co. v. Arr-Maz Prods., L.P.*, No. 4:12-CV-3118, 2013 WL 12141246, at *2 (D. Neb. May 7, 2013) ("In considering a Rule 12(b)(3) motion, the Court takes the well-pleaded facts of the plaintiff's complaint as true, but only to the extent they are uncontroverted by the defendant's affidavits."); *Gridiron Mgmt. Grp. LLC v. Wranglers*, No. 8:12CV3128, 2012 WL 5187839, at *5 (D. Neb. Oct. 18, 2012) ("In determining whether venue is proper, all well-plead [sic] allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits." (quotation marks and citations omitted)); *Sirius Computer Sols., Inc. v. Evans*, No. 8:11CV439, 2012 WL 13055016, at *5 (D. Neb. Apr. 23, 2012) ("When ruling on a motion under Rule 12(b)(3), [a]ll well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits." (quotation marks and citations omitted)); *Mimun v. Bashir*, No. 8:08 CV 204, 2008 WL 3994878, at *1 (D. Neb. Aug. 25, 2008) ("In determining whether venue is proper, all well-plead allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits." (quotation marks and citations omitted)); *Rivera v. Medico Grp.*, No. 4:07CV3180, 2007 WL 4208817, at *2 (D. Neb. Nov. 19, 2007) ("In determining whether venue is proper, all well-pled allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits." (quotation marks and citations omitted)).

couple was told that [Rahim] was inadmissible for misrepresentation." Filing 5-1 at 6 (¶ 19). The key allegations that are the basis for Plaintiffs' claims are the following:

> 20. Instead of a visa approval the applicant was told there was an issue with his birthdate. The Embassy then stated that a scholastic database (WASSE) <u>that has no relationship to the visa application</u> had a different birthdate listed for the Plaintiff-husband. The Defendants bizarrely went to a scholastic database, instead of the official documents brought to them (his passport and birth certificate) to allege that his birthdate was incorrect. (Exhibit Two)
>
> 21. WASSE is The West African Senior School Certificate Examination. When the Plaintiff-husband took this exam in 2000 the incorrect date of birth was entered into the WASSE database. The Plaintiff-husband has supplied a statement from the Head Master at his old school to this affect. (Exhibit Three) He has also supplied very old vaccine records and statement from his birth hospital to confirm his age, along with his passport and birth certificate. (Exhibit Four)
>
> 22. Inexplicably the Defendants are saying this error in his birthdate makes him inadmissible for misrepresentation. But even IF HIS BIRTHDATE WERE WRONG it would not be misrepresentation because it has **absolutely no bearing** on whether he should have his visa issued or not. This is not an age-based visa, like that of a child under 21.

Filing 5-1 at 6 (¶¶ 20–22) (emphasis in the original).

### B. Procedural Background

Plaintiffs filed their original Complaint for Declaratory and Injunctive Relief and for Writ of Mandamus on January 8, 2025. Filing 1. They named as defendants Merrick Garland, who was then the United States Attorney General; Anthony Blinken, who was then the United States Secretary of State; Alejandro Mayorkas, who was then the Secretary of Homeland Security; Ur M. Jaddou, who was then the Director of the United States Citizenship and Immigration Service (USCIS); and Rolf Olson, who was then the Deputy Chief of Mission in Accra, Ghana. Filing 1 at 1. All were named as defendants in their official capacities and their successors and assigns were included. Filing 1 at 4 (¶¶ 9–13). On March 13, 2025, Plaintiffs filed a First Amended Complaint for Declaratory and Injunctive Relief and for Writ of Mandamus. Filing 5-1. In the Amended Complaint, Plaintiffs named all the original defendants and added Loren K. Miller, who was then

3

the Director of the Nebraska Service Center of the USCIS, also in his official capacity, and his successors and assigns. Filing 5-1 at 5 (¶ 14).

Plaintiffs described the "Nature of the Action" in their original Complaint in pertinent part as follows:

> 2. The Consular Post of the United States in Accra ("DOS") has committed a legal impossibility that it appears only this court can rectify. DOS has completely ignored procedural due process. DOS is stating that the Plaintiff-husband's official documents, that DOS has accepted are valid, are not proof of his birthdate. You cannot accept the documents as valid but not the birthdate. Worse, the only basis for the allegation his birthdate is false is that in a Ghanian school database his birthdate is different. We have tried to show with vaccine records, birth records, and a letter from the entity responsible for the school database that this was a simple error; yet DOS refuses to recognize this.

Filing 1 at 2 (¶ 2). After adding Loren K. Miller, the Director of the USCIS Nebraska Service Center, in the First Amended Complaint, Plaintiff added the following sentence to this paragraph: "Due to the continued ineptitude of DOS to logically approach this case we have been forced to file an I-601 waiver; thus, we now have to ask USCIS to recognize this waiver is moot." Filing 5-1 at 2 (¶ 2).

Even though Plaintiffs added a new Defendant, Plaintiffs' Claims for Relief did not change with the filing of the First Amended Complaint. *Compare* Filing 1 at 10–11 (¶¶ 37–43), *with* Filing 5-1 at 11–12 (¶¶ 37–43). Their First Claim for Relief is a claim pursuant to the Administrative Procedures Act (APA), 5 U.S.C. § 702, alleging that "Defendants have unreasonably delayed the [visa] process." Filing 5-1 at (¶¶ 38–39). It alleges further, "As a result of defendant USCIS's illegal conduct, Plaintiffs are 'suffering [a] legal wrong because of agency action' and are 'adversely affected or aggrieved by [the] agency action,' and therefore are entitled to judicial review of the revocation [sic] under 5 U.S.C. § 702." Filing 5-1 at 11 (¶ 40). Plaintiffs' Second Claim for Relief is a claim for injunctive relief for violation of the APA, 5 U.S.C. § 706, alleging "Pursuant to 5 U.S.C. § 706(2), this Court can hold agency action unlawful and compel the agency

4

to act within its legal responsibilities." Filing 5-1 at 11 (¶ 42). Plaintiffs therefore "request this Court compel the Consulate to issue the immigrant visa." Filing 5-1 at 11 (¶ 43).

On March 20, 2025, a magistrate judge of this Court entered an Order granting Defendants' Motion for Substitution. Filing 10. The Order substituted as Defendants Pam Bondi, United States Attorney General; Marco Rubio, Secretary of State; Kristi Noem, Secretary of the Department of Homeland Security; Kika Scott, Acting Director of USCIS; and Thomas Schuurmans, Acting Director of the USCIS Nebraska Service Center. Filing 10. Neither Defendants' Motion nor the Order required substitution of another Defendant for Rolf Olson, the Deputy Chief of Mission in Accra, Ghana. *See* Filing 8 (motion); Filing 10 (order).

On March 20, 2025, the parties filed a Joint Motion to Extend Defendants' Responsive Pleading Deadline and to Bifurcate Venue Issue. Filing 9. That same day, a magistrate judge of this Court entered a Text Order granting that Motion. Filing 11. The Order stated in part,

> Defendants' motion and brief addressing the issue of venue shall be filed on or before April 28, 2025. Plaintiffs shall file their brief in response on or before June 9, 2025. Defendants' reply brief shall be filed on or before June 23, 2025.

Filing 11. The Text Order also set a deadline for Defendants' responsive pleading if the Court denied Defendants' challenge to venue. Filing 11.

### C. The Motion to Dismiss

Defendants filed the anticipated Motion to Dismiss for Lack of Venue on April 9, 2025. Filing 12. Plaintiffs originally filed a Response on April 21, 2025, Filing 16, but they then sought leave to amend their Response almost two months later on June 13, 2025, Filing 17. A magistrate judge of this Court granted Plaintiffs' motion to amend their response, stating that Plaintiffs' brief in response can be found at Filing 17-2. Filing 18. On June 23, 2025, Defendants were granted an extension of time to file a reply, Filing 20, and Defendants filed their Reply on July 2, 2025. Filing 21.

5

The gravamen of Defendants' motion is that "the federal agencies at issue do not 'reside' within the District of Nebraska; the Plaintiffs do not reside in the District of Nebraska; and there was not a substantial part of the events (or any events) giving rise to the claim occurring in the District of Nebraska." Filing 13 at 2. Thus, Defendants assert that venue is improper under 28 U.S.C. § 1391(e). Filing 13 at 6. Defendants argue that Plaintiffs reside in Toledo, Ohio, and outside the United States. Filing 13 at 6–7.

More specifically, Defendants argue that they do not reside in the District of Nebraska because the residence of official defendants is determined by the "official residence" of the federal officer or agency. Filing 13 at 7. They argue that the agencies involved here are the DOS, the Department of Justice (DOJ), the Department of Homeland Security (DHS), and USCIS. Filing 13 at 7. Defendants contend that the USCIS Nebraska Service Center is not a federal agency, just a regional office, which does not establish an official residence of USCIS in this District. Filing 13 at 7. Thus, Defendants argue that the proper venues are the District of Columbia and Maryland, the former because it is the official residence of the DOS, the DOJ, and the DHS, and the latter because USCIS moved its headquarters there in late 2020. Filing 13 at 7–8. Defendants argue further that there was no substantial part of the events giving rise to Plaintiffs' claims in this District, because the basis of the lawsuit is the decision of a DOS consular officer in Ghana. Filing 13 at 8. Defendants contend that the I-130 petition giving rise to the visa application—if relevant— was processed at the USCIS Vermont Service Center not the USCIS Nebraska Service Center. Filing 13 at 8. Defendants contend that Plaintiffs' reference to "some nonspecific future action" that might take place at the USCIS Nebraska Service Center cannot retroactively give rise to the DOS's visa denial. Filing 13 at 8.

In response, Plaintiffs argue that the Director of the USCIS Nebraska Service Center can overturn the finding of inadmissibility in this case because the I-601 petition for a waiver is now pending in his office. Filing 17-2 at 3. They argue that the Director of the USCIS Nebraska Service Center "could work in conjunction with other Defendants to review the inadmissibility finding, one that here has no *bona fide* or legitimate basis." Filing 17-2 at 3. Plaintiffs then contend that Director Schuurmans of the USCIS Nebraska Service Center resides in Nebraska. Filing 17-2 at 4. They argue that Director Schuurmans must now review the submitted I-601 waiver petition and has jurisdiction over the question of inadmissibility, so that venue in this District is "sound." Filing 17-2 at 4. Lastly, Plaintiffs argue, "Should this court decide that venue is not proper we ask the case be transferred and not dismissed," pursuant to 28 U.S.C. § 1406(a). Filing 17-2 at 4. Plaintiffs do not identify the district or districts to which the case could be transferred let alone a preference for any particular district.

In reply, Defendants argue, "Plaintiffs are conflating Plaintiff Rahim's immigrant visa denial with his pending I-601 waiver, which are separate matters." Filing 21 at 2. Furthermore, they contend that the Amended Complaint makes no claims against the USCIS Nebraska Service Center or the I-601 process, so those matters are not before the Court. Filing 21 at 2. Thus, Defendants contend that Plaintiffs' attempt to establish venue in this District based on the pending I-601 waiver petition is improper. Filing 21 at 2. In reply to Plaintiffs contention that the Court should transfer rather than dismiss this case if the Court concludes that venue is improper, Defendants argue that a transfer would simply waste government resources because the visa denial cannot be appealed. Filing 21 at 4. Finally, Defendants argue that a claim against USCIS regarding the I-601 waiver is unripe and so transferring the case is not in the interest of judicial economy. Filing 21 at 5.

7

## II. LEGAL ANALYSIS

### A. A Preliminary Matter of Subject-Matter Jurisdiction

The parties have focused their arguments on whether this District is a proper venue for an action against Defendant federal officials under 28 U.S.C. § 1391(e). However, the Court finds it must first address an issue of subject-matter jurisdiction. Federal courts "have an independent obligation to assure ourselves of subject-matter jurisdiction." *Gallagher v. Santander Consumer USA, Inc.*, 125 F.4th 865, 867 (8th Cir. 2025) (quoting *Hekel v. Hunter Warfield, Inc.*, 118 F.4th 938, 941 (8th Cir. 2024)); *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 609 (8th Cir. 2018) (explaining that a court "ha[s] an independent obligation to determine whether subject-matter jurisdiction exists before proceeding to the merits"). Consequently, the Court must *sua sponte* assess whether it has subject-matter jurisdiction over this action or all claims in this action, even if the issue was not raised by the parties. *See Lee v. Sanders*, 943 F.3d 1145, 1148 (8th Cir. 2019) ("[W]hen a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)). The subject-matter jurisdiction issue will also clarify the analysis of the venue issue in this case.

#### 1. "Ripeness" Standards for Subject-Matter Jurisdiction

"Ripeness" is a requirement for Article III subject-matter jurisdiction. *Kennedy v. Ferguson*, 679 F.3d 998, 1001 (8th Cir. 2012). "The ripeness requirement serves 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 997–98 (8th Cir. 2022) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967)). "A case is fit for judicial

8

decision when it would not benefit from further factual development and poses a purely legal question not contingent on future possibilities." *Id.* at 998 (citation omitted). On the other hand, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *WinRed, Inc. v. Ellison*, 59 F.4th 934, 947 (8th Cir. 2023) (internal quotation marks omitted) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998), in turn quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).

   2. *Plaintiffs Assert No Ripe Claims Against the USCIS Nebraska Service Center or Its Director*

Plaintiffs hang their assertion of proper venue in this District on their inclusion of Director Schuurmans and the USCIS Nebraska Service Center, as those are the only persons or entities involved in this litigation who even arguably reside in this District. The first problem with such a contention is that no claim is asserted against either Director Schuurmans or the USCIS Nebraska Service Center in the Amended Complaint.

Plaintiffs' First Claim for Relief is that "[a] a result of defendant USCIS's illegal conduct, Plaintiffs are 'suffering [a] legal wrong because of agency action' and are 'adversely affected or aggrieved by [the] agency action,' and therefore are entitled to judicial review of the revocation [sic] under 5 U.S.C. § 702." Filing 5-1 at 11 (¶ 40). Although this claim refers to "USCIS's illegal conduct," this claim does not refer to the USCIS Nebraska Service Center or Director Schuurmans. Indeed, the allegations of wrongful conduct in the Amended Complaint do not refer to USCIS at all but to the determination by a DOS consular official in Accra, Ghana, that Rahim is inadmissible. Filing 5-1 at 6 (¶¶ 19–22) (quoted in § I.A.). Plaintiffs allege that USCIS had approved Plaintiffs' I-130 petition before the I-130 petition was forwarded to the DOS and eventually to the Embassy in Accra, not that USCIS wrongfully denied the I-130 petition. Filing 5-1 at 6 (¶¶ 18–19). Plaintiffs' Second Claim for Relief likewise does not involve Director Schuurmans or the USCIS

9

Nebraska Service Center. It alleges, "Pursuant to 5 U.S.C. § 706(2), this Court can hold agency action unlawful and compel the agency to act within its legal responsibilities," and "request[s] this Court compel the Consulate to issue the immigrant visa." Filing 5-1 at 11 (¶¶ 42–43). Thus, this claim asserts that action by the Consulate must be remedied not action by Director Schuurmans or the USCIS Nebraska Service Center.

It seems axiomatic that the Court does not have subject-matter jurisdiction over a claim against Director Schuurmans or the USCIS Nebraska Service Center if no claim against them was ever pleaded. *See, e.g., Savoie v. Pritchard*, 122 F.4th 185, 194 (5th Cir. 2024) ("The court therefore cannot predicate jurisdiction on [a plaintiff's] allusion to *potential* tort claims he did not plead." (emphasis in the original)). Certainly, any adjudication of an unpleaded claim would be premature and thus not yet ripe. *See Sch. of the Ozarks, Inc.*, 41 F.4th at 997–98.

Taking the analysis one step further, there are only a few references to the USCIS Nebraska Service Center in the Amended Complaint. As mentioned above, one amendment to the original Complaint was the addition of the allegation, "Due to the continued ineptitude of DOS to logically approach this case we have been forced to file an I-601 waiver; thus, we now have to ask USCIS to recognize this waiver is moot." Filing 5-1 at 2 (¶ 2). This allegation does not refer to the USCIS Nebraska Service Center, but Plaintiffs then allege, "Venue in this district is proper under 28 U.S.C. § 1391(e)(3) because no real property is involved in the action and the Defendants in this case now require action by USCIS in Nebraska [on the I-601 waiver petition]." Filing 5-1 at 4 (¶ 7). Plaintiffs also allege that the Director of the USCIS Nebraska Service Center "is responsible for the overall administration of the waiver process under the immigration laws of the United States." Filing 5-1 at 5 (¶ 14). These allegations do not establish that any claims against the USCIS Nebraska Service Center or its Director are ripe.

To the contrary, Plaintiffs' own allegations establish that any claims against the USCIS Nebraska Service Center or its Director are not ripe. One purpose of the ripeness doctrine is "to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Sch. of the Ozarks, Inc.*, 41 F.4th at 998 (quoting *Abbott Lab'ys*, 387 U.S. at 148). Plaintiffs' allegations about the role of the USCIS Nebraska Service Center in consideration of I-601 waivers show that no administrative decision on their I-601 waiver has been formalized or felt in a concrete way by them. *Id.*; *see* Filing 5-1 at 2 (¶ 2), 4 (¶ 7), and 5 (¶ 14). Based on Plaintiffs' allegations, any claim concerning the I-601 waiver proceedings "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *WinRed, Inc.*, 59 F.4th at 947 (quoting *Texas*, 523 U.S. at 300).

Because Plaintiffs assert no ripe claim against Director Schuurmans or the USCIS Nebraska Service Center over which this Court has subject-matter jurisdiction, Plaintiffs cannot premise venue in this District on the residence of those putative Defendants.

### B. Venue

The Court can now turn to the question of the proper venue for this action based on claims and parties properly presented.

*1. Applicable Standards*

Federal Rule of Civil Procedure 12(b)(3) provides for a pre-answer motion to dismiss for "improper venue." Fed. R. Civ. P. 12(b)(3). "The [Supreme] Court explained, 'Rule 12(b)(3) allow[s] dismissal only when venue is "wrong" or "improper." Whether venue is "wrong" or "improper" depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws. . . .'" *City of Benkelman, Nebraska v. Baseline Eng'g Corp.*, 867 F.3d 875, 880 (8th Cir. 2017) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013)). More specifically, the Supreme Court explained, "This

11

question—whether venue is 'wrong' or 'improper'—is generally governed by 28 U.S.C. § 1391 (2006 ed., Supp. V)." *Atl. Marine Constr. Co.*, 571 U.S. at 55.

The part of § 1391 applicable here is 28 U.S.C. § 1391(e)(1), which is "the general venue statute for lawsuits against the Government." *Food & Drug Admin. v. R. J. Reynolds Vapor Co.*, 145 S. Ct. 1984, 1996 (2025). The statute provides as follows:

> (e) Actions where defendant is officer or employee of the United States--
>
> > (1) In general.--A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

28 U.S.C. § 1391(e)(1). "[T]he Supreme Court has explicitly held that § 1391(e) applies only to mandamus actions"—such as the one Plaintiffs assert here—"and not to suits for monetary relief against federal officials in their individual capacities." *Borntrager v. Stevas*, 772 F.2d 419, 421 (8th Cir. 1985) (citing *Stafford v. Briggs*, 444 U.S. 527 (1980)).

When § 1391(e) was added in 1962, it provided an "expanded choice of venue." *Stafford*, 444 U.S. at 534. "It is designed to permit an action *which is essentially against the United States* to be brought locally rather than requiring that it be brought in the District of Columbia simply because Washington is the official residence of the officer or agency sued." *Id.* at 540 (quoting H.R.Rep.No. 1936, 86th Cong., 2d Sess., at 2 (emphasis added in *Stafford*)). The expansion of the choice of venue was not achieved by changing the meaning of "residence" of such a federal officer or agency but by adding the other two alternatives in § 1391(e)(1)(B) and (C). *See Reuben H.*

12

*Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978) ("The manner which Congress chose to effectuate this objective [of broadening the number of places where federal officials and agencies could be sued] was by adding additional venue choices to a plaintiff, not by changing previously established definitions of residence.").[2]

2. *Venue Is Lacking under § 1391(e)*

   a. No Proper Defendant Resides in this District

The parties devote their greatest attention to the first basis for venue under § 1391(e)(1)(A)—where a defendant in the action "resides." Because the Court has concluded that there is no ripe claim against the USCIS Nebraska Service Center or its Director, venue cannot be based on the Director's residence or the presence of a USCIS office in Nebraska. The Seventh Circuit Court of Appeals explained in more detail the effect of the applicable statutory provision:

> There is nothing in the statute or its legislative history which suggests that Congress also sought to allow a federal agency to be sued Eo nomine wherever it may maintain an office. To the contrary, the wording of the statute itself precludes such an expansive interpretation.
>
> To hold that a federal agency can be sued Eo nomine wherever it maintains an office would, as a practical matter, render [current] subsections [(B) and (C)] superfluous. With the vast growth of the federal bureaucracy, federal agencies undoubtedly have offices in most, if not all, judicial districts. That being true, there would have been little need for the subsections dealing with the specifics of where the cause of action arose, where the plaintiff resides, and where relevant real estate is situated, if such an expansive interpretation of residency of defendant were intended by Congress. Moreover, such an interpretation would mean that a plaintiff could file a suit in any district regardless of how remote that district's contact may be with the litigation. "The venue statute was not intended to permit forum-shopping, by suing a federal official wherever he could be found, or permitting test cases far from the site of the actual controversy." *Hartke v. Federal Aviation Administration*, 369 F.Supp. 741, 746 (E.D.N.Y.1973).

---

[2] The version of § 1391(e) in effect in 1978 provided that "an action may be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action." See *Reuben H. Donnelley Corp.*, 580 F.2d at 266. The current version of § 1391(e), quoted in the body, labels former subsection (1) subsection (1)(A), combines former subsections (2) and (3) into subsection (1)(B), and labels former subsection (4) subsection (1)(C). 28 U.S.C. § 1391(e)(1).

*Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978). Thus, the location of the USCIS Nebraska Service Center—merely an office maintained in this state by USCIS—does not establish that this District is a proper venue for this action, even if the action could be asserted against the USCIS Nebraska Service Center. *Id.*

As to Defendants properly before the Court, the Fifth Circuit Court of Appeals observed, "The general rule in suits against public officials is that a defendant's residence for venue purposes is the district where he performs his official duties." *Fla. Nursing Home Ass'n v. Page*, 616 F.2d 1355, 1360 (5th Cir. 1980), *rev'd on other grounds sub nom. Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147 (1981); *Lamont v. Haig*, 590 F.2d 1124, 1128 (D.C. Cir. 1978) ("What controls is the official residence of the federal defendant where the official duties are performed and not the personal residence of an individual who is a defendant."). The Fifth Circuit also observed, "A number of the cases applying this principle have involved federal officials or agencies and have found only one official residence." *Id.* (citing cases).

The "official residence" of the Secretary of State and the DOS is the District of Columbia, so venue would be proper there. *Aiko Matsuo v. Dulles*, 133 F. Supp. 711, 716 (S.D. Cal. 1955). The "official residence" of DHS and its Secretary is also the District of Columbia, where it is headquartered, so venue would be proper in the District of Columbia. *Ramirez de Ochoa v. United States Citizenship & Immigr. Servs.*, No. 05-CV-2068 BTM (JMA), 2006 WL 8455355, at *2 (S.D. Cal. Aug. 11, 2006). Indeed, "[g]enerally, 'all federal defendants reside in Washington, D.C.'" *Tsi Akim Maidu of Taylorsville Rancheria v. United States Dep't of Interior*, No. 16-CV-07189-LB, 2017 WL 2289203, at *2 (N.D. Cal. May 25, 2017) (quoting *Williams v. United States*, No. C-01-0024 EDL, 2001 WL 1352885, at *1 (N.D. Cal. Oct. 23, 2001)). Plaintiffs do not argue for a different venue for an action against the DOJ or the Attorney General.

Prior to December 2020, the "official residence" of USCIS was also in the District of Columbia. *Holovchak v. Cuccinelli,* No. CV 20-210-KSM, 2020 WL 4530665, at *4 (E.D. Pa. Aug. 6, 2020) (citing cases so holding). However, in 2020, the headquarters of USCIS moved from the District of Columbia to Camp Springs, Maryland. *See, e.g., Melnattur v. USCIS*, Civ. A. No. 20-3013 (JDB), 2021 WL 3722732, at *3 (D.D.C. Aug. 23, 2021) (transferring immigration mandamus suit, and stating that "although USCIS used to be headquartered in Washington, D.C., the agency recently moved its headquarters to Camp Springs, Maryland, effective December 2020"). Thus, the proper venue for an action against USCIS is the District of Maryland.

Venue in this District is not proper for claims against any of the proper Defendants in this action based on where any proper Defendant "resides." 28 U.S.C. § 1391(e)(1)(A).

  b. No Substantial Part of the Events or Omissions Giving Rise to the Claim Occurred in this District

The second basis for venue for an action against an officer or employee of the United States is "any judicial district in which . . . (B) a substantial part of the events or omissions giving rise to the claim occurred. . . ." 28 U.S.C. § 1391(e)(1)(B). Plaintiffs do not attempt to base venue on this provision, not even based on their allegation that Director Schuurmans of the USCIS Nebraska Service Center must review the submitted I-601 waiver petition. *See* Filing 17-2 at 4. Again, the event giving rise to Plaintiffs' claim is the determination by a DOS consular official in Accra, Ghana, that Rahim is inadmissible. Filing 5-1 at 6 (¶¶ 19–22) (quoted in § I.A.). That event did not occur in this District, nor did any event leading to that determination, so venue cannot be based on 28 U.S.C. § 1391(e)(1)(B).

  c. Plaintiffs Do Not Reside Here

The last basis for venue for an action against an officer or employee of the United States is "any judicial district in which . . . (C) the plaintiff resides if no real property is involved in the

15

action." 28 U.S.C. § 1391(e)(1)(C). While no real property is involved in this case, neither Plaintiff resides here. Huddleston does not dispute Defendants' assertions that she resides in Toledo, Ohio, and that Rahim resides in or near Ghana. *See* Filing 13 at 3; *see generally* Filing 17-2. Thus, venue cannot be based on 28 U.S.C. § 1391(e)(1)(C), either.

There is no basis for venue in this District.

### C. Dismissal or Transfer

The lack of venue poses the question of whether the Court should dismiss or transfer the action. *Compare* Filing 13 at 6, 8 (seeking dismissal), *with* 17-2 at 4 (asking that if venue is improper that "the case be transferred and not dismissed"). Rule 12(b)(3) expressly provides for dismissal for improper venue. Fed. R. Civ. P. 12(b)(3). However, like venue itself, the court's options when venue is improper are governed by statute. *In re Union Elec. Co.*, 787 F.3d 903, 906 (8th Cir. 2015) (citing *Atl. Marine Constr. Co.*, 571 U.S. at 55). The statute that applies when venue is improper is 28 U.S.C. § 1406. *Id.* As the Supreme Court explained,

> Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Rule 12(b)(3) states that a party may move to dismiss a case for "improper venue." These provisions therefore authorize dismissal only when venue is "wrong" or "improper" in the forum in which it was brought.

*Atl. Marine Constr. Co.*, 571 U.S. at 55. Thus, when venue is laid in the wrong district, "transfer rather than dismissal is ordinarily ordered if 'in the interest of justice.'" *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 45 (2020) (quoting 28 U.S.C. § 1406).

Both Rule 12(b)(3) and § 1406(a) suggest that a case laying venue in the wrong district should be dismissed—at least absent other considerations. Fed. R. Civ. P. 12(b)(3) (providing for pre-answer dismissal for "improper venue" without reference to the alternative of transfer); 28 U.S.C. § 1406(a) (stating that when the case lays venue in the wrong district, the district court

16

"shall dismiss," then adding an alternative of transfer "if it be in the interest of justice"). Plaintiffs have not attempted to articulate why the "interest of justice" warrant a transfer rather than dismissal. Instead, they assert only—and without citation to any authority—that "[o]rdinarily, the interest of justice requires transferring the case to the proper venue rather than dismissing the case." Filing 17-2 at 4. That statement is the opposite of the statutory language and Supreme Court guidance that makes transfer rather than dismissal contingent upon a showing of "the interest of justice." *See Ritzen Grp., Inc.*, 589 U.S. at 45 ("[T]ransfer rather than dismissal is ordinarily ordered if 'in the interest of justice.'" (quoting 28 U.S.C. § 1406)).

This Court recognizes that several decades ago, the Supreme Court set out the reason for the availability of the transfer alternative under § 1406:

> The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not. The section is thus in accord with the general purpose which has prompted many of the procedural changes of the past few years—that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits. When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply. The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure. If by reason of the uncertainties of proper venue a mistake is made, Congress, by the enactment of § 1406(a), recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as 'time-consuming and justice-defeating technicalities.' It would at least partially frustrate this enlightened congressional objective to import ambiguities into § 1406(a) which do not exist in the language Congress used to achieve the procedural reform it desired.

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962) (footnote omitted).

The Court concludes that this case does not show "the proper diligence on the part of the plaintiff" or that "by reason of the uncertainties of proper venue a mistake has been made." *Id.* To the contrary, this case demonstrates an attempt to manufacture venue in this District based on

17

unripe claims against Defendants who were not involved in the events giving rise to the other claims in this case. Moreover, Plaintiffs sought to manufacture venue in a District that appears to be completely foreign to any parties properly made a part of the action. The Court will not hypothesize about what prompted such a course of action, but the Court cannot conclude that it was simply a "mistake" about the proper venue. Although Plaintiffs asked for transfer rather than dismissal, Plaintiffs did not attempt to identify or choose among any proper venues. *See generally* Filing 17-2.

Nevertheless, the Court finds that the "interest of justice" does warrant the alternative of transfer rather than dismissal pursuant to Rule 12(b)(3) and § 1406. *See Ritzen Grp., Inc.*, 589 U.S. at 45 ("[T]ransfer rather than dismissal is ordinarily ordered if 'in the interest of justice.'" (quoting 28 U.S.C. § 1406)). The interest of justice is served by allowing a plausible claim of erroneous denial of admission based on misrepresentation to proceed expeditiously and without further procedural impediments. As to the appropriate venue, the Court has repeatedly observed that the allegedly erroneous action is the determination by a DOS consular official in Accra, Ghana, that Rahim is inadmissible. Filing 5-1 at 6 (¶¶ 19–22) (quoted in § I.A.). Thus, the Court deems the United States judicial District for the District of Columbia, the official residence of the DOS, to be the proper District to which this case should be transferred because it is a district in which this case could have been brought. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Defendants' Motion to Dismiss for Lack of Venue, Filing 12, is granted to the extent that this case is transferred pursuant to 28 U.S.C. § 1406 to the United States judicial District for the District of Columbia as a venue in which this case could have been brought.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to transfer the case to the United States District Court for the District of Columbia.

Dated this 25th day of July, 2025.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge